IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RUSSELL R. KIMBRELL                                                                 PLAINTIFF

vs.                                           CIVIL NO. 06-5199

MICHAEL J. ASTRUE,[1]
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                          DEFENDANT

## MEMORANDUM OPINION

Russell Kimbrell (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were protectively filed on April 19, 2004, alleging an onset date of May 23, 2003, due to back pain. (Tr. 48-50, 175-177). An administrative hearing was held on March 29, 2006. (Tr. 187-226). Plaintiff was present and represented by counsel.

At the time of the hearing, plaintiff was forty-four years old and possessed a high school education. (Tr. 15, 190). He had past relevant work ("PRW"), as a night watchman and code taker for a bio-security farm. (Tr. 190-193). At the time of the hearing, plaintiff had been laid off from his job as a night watchman due to a "miscommunication" with his boss. (Tr. 190).

---

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On May 17, 2006, the ALJ issued a written decision finding that plaintiff's back disorder constituted a severe impairment, but did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 11-12). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity ("RFC") to perform light work, limited by his ability to stand and/or walk for a total of 2-3 hours during an 8-hour workday, stand continuously for 20 minutes at a time, walk continuously for 20 minutes at a time, and need for breaks every 2 hours for 15 minutes. (Tr. 12). The ALJ also determined that plaintiff had no capacity for postural activities such as climbing, balancing, stooping, crouching, kneeling, crawling, or exposure to heights or moving machinery. With the assistance of a vocational expert, the ALJ then concluded that plaintiff could perform work as a cashier II or assembler. (Tr. 16).

The Appeals Council declined to review this decision. (Tr. 4-6). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs and the case is now ready for decision. (Doc. # 8, 9).

**Applicable Law:**

The issue before this court is whether the Commissioner's decision is supported by substantial record evidence. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Id.*  *See also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir. 2000). "However, our review 'is more than an examination of the record for the existence of substantial

2

evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision.' Nevertheless, as long as there is substantial evidence in the record to support the Commissioner's decision, we will not reverse it simply because substantial evidence exists in the record that would have supported a different outcome, *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995), or 'because we would have decided the case differently.'" *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001)(citations omitted).

A five-part analysis is utilized in social security disability cases. *See e.g., Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Applying this analysis, the ALJ must determine, sequentially, the following: 1) whether the claimant is employed; 2) whether the claimant has a severe impairment; 3) whether the impairment meets a listed impairment; 4) whether the impairment prevents the claimant from doing past work; and 5) whether the impairment prevents the claimant from doing any other work. *Id.*; *see also* 20 C.F.R. § 404.1520.

If the claimant fails at any step, the ALJ need not continue. "The claimant carries the burden of establishing that [he] is unable to perform [his] past relevant work, i.e., through step four, at which time the burden shifts to the Commissioner to establish that [he] maintains the residual functional capacity to perform a significant number of jobs within the national economy." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001)(citing *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000)).

**Evidence Presented:**

On May 17, 2000, plaintiff's treating doctor, Dr. Richard S. Kyle, noted that plaintiff had broken his back approximately 17 years earlier. (Tr. 105-106, 112). At the time of his appointment, plaintiff was working as a night watchman. Dr. Kyle diagnosed him with grade 2 spondylolisthesis

of the L5-S1 level and mild disc space narrowing at the L4-5 level compatible with degenerative change. (Tr. 110). Records indicate that plaintiff's pain had been exacerbated because his job required him to bend and shovel. An examination revealed paraspinal muscle tension. Dr. Kyle ordered further testing and instructed plaintiff not to shovel, dig, or lift anything over 40 pounds. (Tr. 105-106, 112).

Plaintiff underwent a consultative examination on July 16, 2004, with Dr. Wojciech Dulowski. (Tr. 117-123). Plaintiff complained of chronic back pain that radiated into his right lower extremity. Dr. Dulowski noted that plaintiff walked with a limp to the right side and his right leg was shorter than his left by 1 centimeter. An examination revealed a restricted range of motion in the lumbar spine, tenderness in the midline at levels L4-5 and L5-S1, spasm of the paravertebral muscles, a small deformity and flexion of the fifth right finger, proximal pip after fraction, and malunited fractures with slight deformity of the medial aspect of the right tibia. (Tr. 121). Dr. Dulowski diagnosed plaintiff with chronic mechanical back pain, a history of spondylolisthesis, a malunited fracture of the right tibia with shortening of the right leg, and a deformity of the pip of the fifth right finger. (Tr. 118).

Plaintiff was evaluated by Dr. Denise LaGrand on July 17, 2004, at which time he complained of social phobia, paranoia, anxiety, low energy, and difficulty sleeping. (Tr. 123-128). During the mental status examination, Dr. LaGrand noted that plaintiff did not appear to be in any pain. (Tr. 123). Plaintiff stated that he did not have any difficulty with personal hygiene, dressing, preparing food, shopping, or driving. (Tr. 127). Plaintiff also stated that he enjoyed drag racing and building hotrods. (Tr. 127). Dr. LaGrand concluded that plaintiff had a low ability to handle the

stress of a work setting or deal with supervisors. (Tr. 128). Dr. LaGrand also stated that plaintiff's ability to understand, remember, and carry out instructions was average while his ability to handle the stress of a work setting or deal with supervisors or co-workers was low average. Barriers to his ability to work were noted to be physical and social problems. (Tr. 128).

On September 1, 2004, plaintiff complained of back pain that radiated into his right leg and indicated that he could not walk without pain. (Tr. 151). An examination revealed tenderness in the lumbosacral spine. Further, a straight leg raise test was positive. Accordingly, Dr. Pearson ordered further testing to determine the cause of plaintiff's pain. (Tr. 151).

On September 14, 2004, plaintiff followed-up with Dr. Pearson regarding his test results. (Tr. 150). X-rays showed grade 1 degenerative joint disease of the lumbar spine. (Tr. 163). Because plaintiff was obese and a smoker, Dr. Pearson advised him to lose weight and stop smoking. He also suggested that plaintiff discontinue drinking sodas and begin exercising. (Tr. 150).

On October 25, 2004, plaintiff sought emergency treatment for lower back pain. (Tr. 155-159). Although he exhibited a normal range of motion, there was tenderness noted in the area of the lumbar spine. Plaintiff was diagnosed with lower back pain and released home with prescriptions for Flexeril and Lortab. (Tr. 157).

On January 6, 2006, plaintiff underwent a consultative orthopedic examination with Dr. Robert Thompson. (Tr. 166-171). He informed Dr. Thompson that he had stopped working because of increasing difficulties with his lower back. (Tr. 166). A physical examination revealed a normal range of motion in the cervical spine, a slightly decreased range of motion in the lumbar spine, a 1 centimeter shortening of the right tibia, a normal range of motion in the knees and ankles, some

decreased sensation in the right calf and right heel, and an inability to walk on his toes on his right side. (Tr. 166). Dr. Thompson assessed plaintiff with spondylolisthesis grade 2 at the L5-S1 level with marked disc narrowing and probable bulging or herniated discs at the L3-4 and L4-5 levels based on calcified posterior structures visible on the x-rays. (Tr. 167). Dr. Thompson concluded that plaintiff could occasionally lift 11-20 pounds, sit for 6 hours during an 8-hour workday, stand and walk for 2 to 3 hours during an 8-hour workday, and never climb, balance, stoop, crouch, kneel, crawl, or be exposed to heights or moving machinery. (Tr. 170).

**Discussion:**

Plaintiff contends that the ALJ erred by failing to properly discredit his testimony regarding his subjective complaints and limitations and failing to assign the appropriate weight to the opinion of the consulting source specialist. (Doc. # 12). We disagree.

 A. **Subjective Complaints:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit

recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As outlined above, we note that plaintiff has been diagnosed with chronic lower back pain and spondylolisthesis. The records reveal that plaintiff broke his back approximately 20 years prior to his alleged onset date but continued to work in spite of this condition. (Tr. 105-106, 112, 191, 205). *See Gowell v. Apfel*, 242 F.3d 793, 798 (8th Cir. 2001) (claimant worked with her impairments for years). Further, during the relevant time period, plaintiff did not seek consistent treatment for his pain. *See id*. at 967 (holding that ALJ may discount disability claimant's subjective complaints of pain based on the claimant's failure to pursue regular medical treatment). The record reveals only 3 occasions during which plaintiff sought treatment (September and October 2004). (Tr. 151, 163, 155-159). The remaining 2 medical reports were prepared by consultative physicians at the request of the Administration. Had plaintiff's pain been as severe as alleged, we believe he would have sought more consistent treatment.

Plaintiff contends that his failure to seek consistent medical treatment was due to a lack of insurance and financial resources to obtain the necessary treatment  It is true that, "[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a medical problem ." *Shannon v. Chater,* 54 F.3d 484, 486 (8th Cir.1995). However, it is also true that plaintiff's attempts to excuse his failure to pursue treatment cannot be wholly excused due to his claims of financial hardship. There is simply no evidence to show that plaintiff was refused low cost or indigent medical services. *See Murphy v. Sullivan,* 953 F.2d 383, 386-87 (8th Cir.1992) (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan,* 892 F.2d 747, 750 n.

2 (8th Cir. 1989) (noting that "lack of means to pay for medical services does not *ipso facto* preclude the Secretary from considering the failure to seek medical attention in credibility determinations") (internal quotations omitted). To the contrary, the evidence reveals that plaintiff was treated at a free clinic in September 2004. (Tr. 150, 151).

It is also significant to note that plaintiff's physical examinations have yielded only minor limitations. (Tr. 151, 157, 166). Further, plaintiff has received only conservative treatment. *See Gowel v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding fact that physician prescribed conservative treatment weighed against plaintiff's subjective complaints). In fact, plaintiff was prescribed medication to treat his pain on only one occasion. (Tr. 157). At the administrative hearing, plaintiff even testified that he was taking over-the-counter pain medications, rather than prescription drugs. (Tr. 205). *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993) (pain which can be remedied or controlled with over-the-counter analgesics normally will not support a finding of disability). As such, it is clear that plaintiff's subjective complaints are not supported by the medical evidence.

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his supplemental interview outline, plaintiff reported an ability to perform light housework, read, watch television, listen to the radio, and visit with friends and relatives. (Tr. 62-66). Plaintiff also told Dr. LaGrand that he enjoyed drag racing and building hotrods and experienced no difficulty preparing food, shopping, or driving. (Tr. 127). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and

drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

While we do note the results of Dr. LaGrand's mental evaluation, we can find no other evidence in the record to support plaintiff's contention of a disabling mental impairment. In fact, at the time of Dr. LaGrand's evaluation, plaintiff admitted that he had no current or past history of mental health treatment. (Tr. 123). Plaintiff was even able to work with these alleged social problems until May 2003, at which time he was laid off from his job as a night watchman. (Tr. 190, 205). As such, we cannot say that substantial evidence distracts from the ALJ's determination. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (failure of claimant to maintain a consistent treatment pattern for alleged mental impairments is inconsistent with the disabling nature of such impairments); *see also Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990) (holding that a mere diagnosis is not sufficient to prove disability, absent some evidence to establish a functional loss resulting from that diagnosis).

Therefore, although it is clear that plaintiff suffers with some degree of pain, she has not established that she is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

B.  **Residual Functional Capacity:**

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work.  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000).  Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional.  *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, evaluations prepared by consultative examiners, plaintiff's subjective complaints, and his medical records.  On August 10, 2004, Dr. Kimberly G. Adametz, a non-examining, consultative physician, concluded that plaintiff remained capable of occasionally lifting and/or carrying 50 pounds; frequently lifting and/or carrying 25 pounds; standing and/or walking at least 2 hours in an 8-hour workday; and sitting about 6 hours in an 8-hour workday. (Tr. 144).  She also determined that plaintiff could only occasionally stoop but no other limitations were noted.  (Tr. 145).

On August 17, 2004, Dr. Hannah Swallow completed a psychiatric review technique form. (Tr. 129-142). After reviewing plaintiff medical records, she determined that plaintiff had only mild restrictions with regard to activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Further, she found no evidence of episodes of decompensation. (Tr. 139). Dr. Swallow noted that plaintiff had been diagnosed with social anxiety and given a global assessment of functioning score of 55 but she found no evidence of a severe functional limitation. (Tr. 141).

Following an independent review of the record in this matter, we find substantial evidence to support the ALJ's RFC determination. Dr. Thompson, the only examining doctor to complete an RFC assessment, concluded that plaintiff could occasionally lift 11-20 pounds, sit for 6 hours during an 8-hour workday, stand and walk for 2 to 3 hours during an 8-hour workday, and never climb, balance, stoop, crouch, kneel, crawl, or be exposed to heights or moving machinery. (Tr. 170). Dr. Thompson is an orthopedic specialist and based his opinion on both a physical examination of the plaintiff and objective medical testing. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). Given the fact that plaintiff failed to seek consistent treatment for his alleged impairments and the fact that condition required no more than conservative care, when treatment was rendered, the ALJ's RFC will stand.

C.  **Other work determination:**

We also find substantial evidence supports the ALJ's finding that plaintiff could still perform work as a cashier II and assembler.  Pursuant to hypothetical questions posed by the ALJ, the VE testified that a person of plaintiff's age and experience, who could occasionally lift 11-20 pounds; sit for 6 hours during an 8-hour workday; stand and walk for 2 to 3 hours during an 8-hour workday; would require a 15 minute break every 2 hours; and, could never climb, balance, stoop, crouch, kneel, crawl, or be exposed to heights or moving machinery, could perform work as a cashier II, assembler, and surveillance system monitor. (Tr. 16, 105, 200, 213-221).  After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the limitations that the ALJ accepted as true and were supported by the record as a whole.  *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996).

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

DATED this 6th day of September 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE